UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  07-61686-Civ-ZLOCH
MAGISTRATE JUDGE P. A. WHITE

JOSEPH J. DIXON, JR.,                :

          Petitioner,                :

v.                                   :          <u>REPORT OF</u>
                                                <u>MAGISTRATE JUDGE</u>
WALTER A. McNEIL,[1]                 :

          Respondent.                :
_____

    Joseph J. Dixon, Jr., a state prisoner confined at Florida State Prison at Starke, has filed a <u>pro se</u> petition for writ of habeas corpus pursuant to 28 U.S.C. §2254, challenging the constitutionality of his conviction of dealing in stolen property entered on a jury verdict in Broward County Circuit Court case number 01-2971 CF10A.

    This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

    For its consideration of this petition the Court has the response of the state to an order to show cause with multiple exhibits, and the petitioner's reply.

---

[1]Walter A. McNeil has been named Secretary of the Florida Department of Corrections, replacing former Secretary James McDonough. Pursuant to Federal Rule of Civil Procedure 25(d)(1) McNeil is now the proper respondent in this action and should "automatically" be substituted for McDonough. Accordingly, the Clerk is directed to docket and change the designation of the respondent.

Dixon makes the following claims:

1. The police lacked probable cause to arrest him, in violation of his rights under the Fourth Amendment.

2. He was not given his full and complete <u>Miranda</u> rights on tape prior to interrogation, and the waiver form that was used did not comport with the <u>Miranda</u> requirements.

3. His identification by the victim should have been suppressed because the photographic identification was tainted.

4. He received ineffective assistance of counsel when his lawyer failed to:

   a. object to an irrelevant and prejudicial portion of his taped statement that was played at trial;

   b. move to suppress his taped statement which was obtained after he was removed from his home for questioning without probable cause;

   c. move to suppress the photographic identification made in violation of <u>Miranda</u>;

   d. move to suppress his taped statement on the ground that his <u>Miranda</u> warnings were not recorded; and

   e. move to suppress his taped statement on the ground that the <u>Miranda</u> waiver form did not apprise him of his right to have counsel present during questioning.

On August 6, 2001, Dixon was charged by information with burglary of a dwelling with a battery (Count I), attempted sexual battery while armed (Count II), and dealing in stolen property

(Count III). [DE 11, Ex.2] He was tried to a jury in May, 2002 [DE 11, Ex.6], and was acquitted on Counts I and II but convicted on Count III. [DE 11, Ex.7] On May 29, 2002, Dixon was sentenced to serve 30 years in prison as an habitual felony offender. [DE 11, Ex.9]

Dixon prosecuted a direct appeal of his conviction and sentence. His counsel subsequently filed a brief and motion to withdraw pursuant to Anders v. California, 386 U.S. 738 (1967) [DE 11, Ex.11], and Dixon filed a pro se brief in which he argued that his sentence was vindictively imposed because he rejected a plea offer and elected to proceed to trial. [DE 11, Ex.13] On November 26, 2003, Dixon's conviction and sentence were affirmed without comment. Dixon v. State, 861 So.2d 44 (Fla. 4 DCA 2003)(table). [DE 11, Ex.15] His conviction therefore became final for federal purposes ninety days thereafter, or on or about February 24, 2004. Griffith v. Kentucky, 479 U.S. 314, 321, n.6 (1986) (conviction is final when judgment of conviction has been rendered, availability of appeal exhausted, and time for petition for certiorari elapsed or petition is denied); accord, Bond v. Moore, 309 F.3d 770 (11 Cir. 2002).

On April 13, 2004, Dixon filed a motion for postconviction relief pursuant to Fla.R.Cr.P. 3.850. [DE 11, Ex.18] After various amendments and motions to supplement, a second supplemental motion with supporting memorandum was filed on April 26, 2006, in which Dixon raised the same five claims for relief he makes in this federal proceeding. [DE 11, Ex.19] The state filed a detailed response in opposition on March 7, 2007 [DE 11, Ex.20], and on March 8, 2007, the collateral trial court denied relief "for the reasons contained in the State's response." [DE 11, Ex.21] That result was summarily affirmed without written opinion, Dixon v.

3

State, 959 So.2d 270 (Fla. 4 DCA 2007)(table), with the mandate issuing on July 20, 2007 [DE 11, Ex.24-25], and this federal proceeding ensued on November 13, 2007.[2]

The state correctly acknowledges that this petition was timely filed pursuant to §2244, as amended by the Antiterrorism and Effective Death Penalty Act of 1996. Artuz v. Bennett, 531 U.S. 4 (2000)(AEDPA limitations period is tolled by properly-filed applications for state postconviction relief). The state also rightfully does not challenge any of Dixon's claims on the basis of the exhaustion requirement. Anderson v. Harless, 459 U.S. 4 (1982)(issues raised in a federal habeas corpus petition must have been fairly presented to the state courts and thereby exhausted); Leonard v. Wainwright, 601 F.2d 807 (5 Cir. 1979)(exhaustion requires that claims be pursued in the state courts through the appellate process).

Section 104(d) of the AEDPA [28 U.S.C. §2254(d)] sets out a significant new restriction upon the ability of federal courts to grant habeas corpus relief. It provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the claim --
>
> (1) resulted in a decision that was contrary to, or involved an unreas-

---

[2]The Eleventh Circuit recognizes the "mailbox" rule in connection with the filing of a prisoner's petition for writ of habeas corpus. Vanderberg v. Donaldson, 259 F.3d 1321 (11 Cir. 2001); Adams v. U.S., 173 F.3d 1339 (11 Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing). [DE 1 at 16]

onable application of, clearly
established Federal law, as deter-
mined by the Supreme Court of the
United States; or

(2) resulted in a decision that was
based on an unreasonable determina-
tion of the facts in light of the
evidence presented in the State
court proceeding.

In <u>Williams v. Taylor</u>, 529 U.S. 362 (1999), the Supreme Court
interpreted this provision as follows:

Under the "contrary to" clause, a federal
habeas court may grant the writ if the state
court arrives at a conclusion opposite to that
reached by this Court on a question of law or
if the state court decides a case differently
than this Court has on a set of materially
indistinguishable facts. Under the "unreas-
onable application" clause, a federal habeas
court may grant the writ if the state court
identifies the correct governing legal prin-
ciple from this Court's decisions but unreas-
onably applies that principle to the facts of
the prisoner's case.

"Clearly established federal law" refers to the holdings of
the United States Supreme Court as of the time of the relevant
state court decision. <u>Putnam v. Head</u>, 268 F.3d 1223, 1241 (11 Cir.
2001). A state court's decision is "contrary to" clearly
established federal law if the state court 1) applied a rule that
contradicts United States Supreme Court case law, or 2) arrived at
a result different from that reached in a United States Supreme
Court decision when faced with materially indistinguishable facts.
<u>Id.</u>; <u>see also</u>, <u>Fugate v. Head</u>, 261 F.3d 1206, 1215-16 (11 Cir.
2001). A state court arrives at an "unreasonable application" of
clearly established federal law if it 1) unreasonably applies a

5

correct legal principle for Supreme Court case law to the facts of a petitioner's case, or 2) unreasonably extends or declines to extend a legal principle from Supreme Court case law to a new situation. Id. In this context, an "unreasonable application" is an "objectively unreasonable" application. Williams v. Taylor, supra at 409.

The Eleventh Circuit has stressed the importance of this new standard, stating that the AEDPA "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." Crawford v. Head, 311 F.3d 1288, 1295 (11 Cir. 2002). Specifically, the AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal 'retrials' and to ensure that state court convictions are given effect to the extent possible under law." Crawford, supra at 1295, quoting Bell v. Cone, 535 U.S. 685 (2002).

In his first claim, Dixon argues that the police lacked probable cause to arrest him, in violation of his rights under the Fourth Amendment. The record reveals that after the victim reported that property was stolen from her in a burglary, the police discovered items of her jewelry at the Payless Jewelry Pawn Shop [T.158-59], and Dixon's right thumb print appeared on the pawn slip. [T.117-20] When a detective went to Dixon's residence for the purpose of arresting him [T.163-64], Dixon's live-in girlfriend signed a consent form for a search of the premises. [T.175]

Review of Dixon's first claim is precluded by the settled principle that federal habeas corpus relief is not available to a state prisoner on the ground that a violation of the Fourth

Amendment occurred, if the state provided an opportunity for full and fair litigation of the claim. The rule was announced first in the context of tangible evidence seized in an allegedly unconstitutional search, Stone v. Powell, 428 U.S. 465 (1976), and later extended to statements or confessions challenged on Fourth Amendment grounds. Cardwell v. Taylor, 461 U.S. 571 (1983). It now extends to statements admitted at trial, Devier v. Zant, 3 F.3d 1445, 1455 (11 Cir. 1993); Harris v. Dugger, 874 F.2d 756, 761 (11 Cir.), cert. denied, 493 U.S. 1011 (1989), and the results of pretrial identification procedures such as line-ups. Ponce v. Cupp, 735 F.2d 333, 335 (9 Cir. 1984); Swicegood v. Alabama, 577 F.2d 1322, 1324-25 (5 Cir. 1978).

If the opportunity for litigation of Fourth Amendment issues is provided at the state level, federal habeas corpus relief is precluded whether or not the petitioner has availed himself of the state procedures. Caver v. State of Alabama, 577 F.2d 1188 (5 Cir. 1978). A federal court can raise the Stone bar sua sponte where, as here, the respondent does not invoke it. Woolery v. Arave, 8 F.3d 1325 (9 Cir.), cert. denied, 511 U.S. 1057 (1994); Bell v. Lynaugh, 828 F.2d 1085, 1091-92 (5 Cir.), cert. denied, 484 U.S. 933 (1987); Davis v. Blackburn, 803 F.2d 1371, 1372-73 (5 Cir. 1986); O'Berry v. Wainwright, 546 F.2d 1204, 1211-12 (5 Cir. 1977).

Because Florida routinely provides opportunity for full and fair litigation of Fourth Amendment claims through suppression proceedings, this court may not reach the merits of Dixon's first argument pursuant to the foregoing authorities, and habeas corpus relief on that basis is unavailable.[3]

---

[3]Because review of claim one is precluded by the Stone v. Powell principle, it is unnecessary to reach the respondent's argument that the claim is procedurally barred from federal review.

In his second claim, Dixon contends that he was not given his full and complete rights under Miranda v. Arizona, 384 U.S. 436 (1966), prior to being interrogated by the police, and the waiver form that was used did not comport with Miranda requirements.[4] Dixon explains that the police "put limits" on his rights by failing to advise him of them during the recorded portion of his statement to the police. [DE 1 at 5] He also asserts that the rights warnings he received were deficient because they failed to advise him that he had a right to have counsel present during interrogation. [DE 1 at handwritten page 3]

As to Dixon's assertion that his Miranda warnings were inadequate because they were not tape recorded, federal law holds that the Constitution does not obligate police officers to record interrogations or confessions. See, e.g., Ridgley v. Pugh, 176 F.3d 484 (9 Cir. 1999)(police officer's failure to tape record a portion of habeas petitioner's interrogation did "not state a violation of a federal constitutional or statutory right"); United States v. Zamudio, 211 F.3d 1279 (10 Cir. 2000)(Fifth Amendment due process rights were not violated by failure of police to tape record petitioner's interrogation); United States v. Yunis, 859 F.2d 953, 961 (D.C. Cir. 1988)("[T]here is no constitutional requirement that confessions be recorded by any particular means."). Since the failure to record Dixon's Miranda warnings thus did not violate his federal constitutional rights, habeas corpus relief in unavailable on that basis.

---

[4]The state's argument that this claim is procedurally barred from federal review is without merit. In contrast to claim three *infra*, no argument was made in the state collateral proceeding that this claim was procedurally defaulted when it was first raised there, so the order denying relief "for the reasons contained in the State's Response" [DE 11, Ex.21] cannot fairly be read as imposing a procedural bar.

Dixon also argues as part of his second claim that the <u>Miranda</u> waiver form did not apprise him of his right to have counsel present during questioning. Dixon here apparently intends to refer to the holding of <u>Roberts v. State</u>, 874 So.2d 1225 (Fla. 4 DCA), <u>rev. denied sub nom</u>. <u>State v. West</u>, 892 So.2d 1014 (Fla. 2005), where the Fourth District Court of Appeal determined that the standard <u>Miranda</u> waiver form used by the Broward Sheriff's Office was inadequate to apprise suspects of their rights since it did not specifically state that an attorney could be present during questioning. However, Dixon's conviction became final in 2004, and the holding of the <u>Roberts</u> case has not been made retroactively applicable to cases on collateral review. In a subsequent decision, a Florida defendant argued in a motion for postconviction relief that <u>Roberts</u> constituted newly-discovered evidence and that its holding should be retroactively applied in his case, but the Florida appellate court expressly rejected those contentions:

> ... We are seeing a number of these appeals, in which the time has run for alleging ineffective assistance of counsel in failing to challenge a *Miranda* rights waiver. As is apparent from our opinion in *Roberts*, that decision involved nothing more than an application of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 116 L.Ed.2d 694 (1966) to a confession. We can conceive of no circumstances under which *Roberts* could be the basis of a claim for post-conviction relief based on newly discovered evidence.
>
> As to appellant's claim that *Roberts* is retroactive, first *Roberts* did not change the law, and second, only decisions of the Florida Supreme Court or the United States Supreme Court can be retroactive in post-conviction proceedings. *Witt v. State*, 387 So.2d 922 (Fla. 1980).

<u>Ulcena v. State</u>, 925 So.2d 346 (Fla. 4 DCA 2006).

The state courts' resolution of the issue of whether <u>Roberts</u> should be applied retroactively comports with applicable federal authority. In determining how the question of retroactivity should be resolved for cases on collateral review, the Supreme Court has stated that new constitutional rules of criminal procedure generally will not be applicable to cases which have become final before the new rules are announced, unless they fall within an exception to the general rule. <u>Teague v. Lane</u>, 489 U.S. 288, 310 (1989). The Court identified two exceptions to its holding, stating that a new rule is applied retroactively to a case on collateral review only: 1) if it places "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe," or 2) if  it implicates fundamental fairness such that failure to apply the new rule would seriously diminish the likelihood of an accurate conviction.  <u>Teague</u> at 311-313.  The Court reasoned that limiting the applicability of new rules of procedure would preserve the function of habeas corpus while safeguarding the principles of finality.  <u>Teague</u> at 308. Because the holding of <u>Roberts</u> that the rights waiver form used in Broward County was deficient falls within neither of the exceptions to the <u>Teague</u> rule, the Florida appellate court's determination that its holding is not amenable to being applied retroactively on collateral review comports with applicable federal authority.

Therefore, the state courts' failure to apply the <u>Roberts</u> rule retroactively in this case was in accord with both Florida and federal law, and Dixon's statement to the police was not invalidated or tainted as result. Accordingly, claim two of this petition as a whole warrants no relief.

In his third claim, Dixon maintains that his identification by the victim should have been suppressed because the photographic identification was tainted.  The state argues persuasively [DE 10 at 5-7] that this claim as framed is procedurally barred from federal consideration.

Dixon first raised the instant claim as "issue three" of his motion for Rule 3.850 postconviction relief. [DE 11, Ex.19 at 5] In its response, the state argued in part that "any claim of trial court error is procedurally barred from being raised in a Rule 3.850 Motion for Post-Conviction Relief since it could or should have been raised on direct appeal." [DE 11, Ex.20 at 11, ¶23] The collateral trial court denied Dixon's motion "for the reasons contained in the State's Response" [DE 11, Ex.21], and that holding subsequently was affirmed without comment.  Dixon v. State, supra. [DE 11, Ex.24]

When a state court has applied a state procedural bar to a claim, that claim is likewise barred from federal habeas corpus review.  Ylst v. Nunnemaker, 501 U.S. 797 (1991); Coleman v. Thompson, 501 U.S. 722, (1991); Murray v. Carrier, 477 U.S. 478 (1986); Wainwright v. Sykes, 433 U.S. 72 (1977). If the last reasoned opinion on a claim explicitly imposes a procedural default, it is presumed that a later decision rejecting the claim did not silently disregard the procedural bar and consider the merits.  Ylst v. Nunnemaker, supra; Harmon v. Barton, 894 F.2d 1268 (11 Cir. 1990).  In addition, where, as here, a state court has ruled in the alternative, addressing both the independent state procedural ground and the merits of the federal claim, a federal court should apply the state procedural bar and decline to reach the merits of the claim.  Alderman v. Zant, 22 F.3d 1541 (11 Cir. 1994). In this case, since the state courts expressly applied a procedural bar to claim three of this petition, the claim is

11

likewise barred from federal consideration.

To overcome a procedural bar, a petitioner must demonstrate objective cause for the failure to properly raise the claim and actual prejudice resulting from the error complained of. United States v. Frady, 456 U.S. 152, 168 (1982); Wainwright v. Sykes, supra. In his reply to the state's response, Dixon makes no attempt to show cause and prejudice for his procedural default of claim three, and instead asserts only that he "holds firm" to the arguments made in his initial §2254 petition. Under these circumstances, claim three of this petition is procedurally barred from federal consideration on the merits.

In his remaining claim, Dixon asserts that he received ineffective assistance of counsel for various reasons. To prevail on a claim of ineffective assistance, a petitioner must demonstrate both that his attorney's efforts fell below constitutional standards, and that he suffered prejudice as a result. Strickland v. Washington, 466 U.S. 668 (1984). A claim of ineffective assistance of counsel fails unless both prongs of the Strickland analysis are satisfied. Waters v. Thomas, 46 F.3d 1506, 1510 (11 Cir. 1995). Review of counsel's conduct is to be highly deferential, Spaziano v. Singletary, 36 F.3d 1028, 1039 (11 Cir. 1994), and second-guessing of an attorney's performance is not permitted. White v. Singletary, 972 F.2d 1218, 1220 (11 Cir. 1992)("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); Atkins v. Singletary, 965 F.2d 952, 958 (11 Cir. 1992). Because a "wide range" of performance is constitutionally acceptable, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Rogers v. Zant, 13 F.2d 384, 386 (11 Cir. 1994).

In his first subclaim of ineffective assistance, Dixon alleges that his attorney failed to object to an irrelevant and prejudicial portion of his taped statement to the police. Specifically, he argues that counsel's efforts fell below constitutional standards when Dixon's admission that his father once bought a stolen police gun was not stricken.

The record reveals that during Dixon's statement to the police, which published to the jury at trial, the interrogating officer asked Dixon hypothetically if his house had been broken into and jewelry was taken, would he think that a person who subsequently sold the jewelry was the thief? [T.180] Dixon responded, "It happened to my father. ... My father bought a gun you know, from a smoking lady and come to find to it was a police gun, and he had cops surround all his house and the cops said okay, we know you got this gun. ... [A]nd they came and they got the gun. But he bought it from a smoker." [T.180-81] Dixon argues that counsel should have sought to have this reference stricken, because it gave the jury the impression that Dixon was guilty by association.

When viewed in the context of the record of a whole, the remarks about which Dixon now complains were clearly harmless. The import of both the interrogating officer's hypothetical question and of Dixon's answer went to the burglary charge, of which Dixon was acquitted. As to dealing in stolen property, the sole charge of which Dixon was convicted, the evidence was overwhelming: as noted above, after the victim reported that property was stolen from her in a burglary, the police discovered items of her jewelry at the Payless Jewelry Pawn Shop [T.158-59], and Dixon's right thumb print appeared on the pawn slip. [T.117-20] The victim went to the pawnshop and identified the jewelry was hers [T.133-34], and the

13

jury obviously disbelieved Dixon's contention that he bought the
jewelry for $20 from a junkie on the street without realizing that
it was stolen. [T.171] Given the strength of this inculpatory
evidence, it cannot be said that counsel's failure to seek to
strike Dixon's reference to his father's receipt of a stolen gun
changed the outcome of his trial, so his argument in this regard
fails to satisfy the prejudice prong of <u>Strickland</u>. Therefore, the
state collateral courts' rejection of this subclaim is in accord
with that applicable federal authority, and that result should not
be altered here. <u>Williams v. Taylor</u>, <u>supra</u>.

In his second subclaim, Dixon asserts that his attorney failed
to provide effective assistance when no motion to suppress Dixon's
taped statement on the basis that it was obtained after he was
removed from his home for questioning without probable cause was
filed. The facts just outlined above essentially belie this one as
well. After the victim met with a detective at the pawnshop and
identified her stolen jewelry [T.133-34], the detective showed her
a photograph of a person, and she told the detective that she
believed that it depicted the man who came into her home without
permission and took her jewelry. She identified Dixon in court as
the person in the photograph. [T.135-36, 146] The detective
testified that the photograph of Dixon was shown to the victim
because he had obtained Dixon's name from the pawn form, and the
thumb print on the pawn form matched that of Dixon. [T.160-63]
After the victim identified Dixon, the detective went to Dixon's
home for the purpose of effecting an arrest and taking Dixon into
custody. [T.163-64]

Under Florida law, a law enforcement officer has probable
cause to arrest if he has reasonable grounds to believe that the
person has committed a felony. <u>State v. Outten</u>, 206 So.2d 392, 397

14

(Fla. 1968). The facts constituting probable cause need not meet the same standards of conclusiveness and probability upon which a conviction must be based. <u>Shriner v. State</u>, 386 So.2d 525, 528 (Fla. 1980). Here, pursuant to these authorities, the police clearly had probable cause sufficient to arrest Dixon, so had counsel moved to suppress the taped statement by arguing otherwise the motion rightfully would have been denied. Therefore, the rejection of Dixon's second subclaim of ineffective assistance by the state court comported with <u>Strickland</u>, <u>supra</u>, and the same result should pertain here. <u>Williams v. Taylor</u>, <u>supra</u>.

In his third subclaim, Dixon contends that his attorney rendered ineffective assistance by failing to move to suppress the tainted photographic identification. However, the record demonstrates that counsel in fact did file a written motion to suppress photographic identification prior to trial. [DE 11, Ex.5] The motion alleged that the victim, Christina Harelik, was first shown a photographic line-up of six individuals and could not identify anyone because the alleged perpetrator had worn a mask. The police then showed her a single, 8" x 10" full-body photograph of the petitioner, and she stated that the individual depicted had a "similar body shape" as the perpetrator but she still could not make a positive identification. Counsel argued that presenting a witness with a single photograph is unduly suggestive, and that the victim's statement regarding the "similar body shape" gave rise to a substantial likelihood of misidentification. [<u>Id</u>.]

A hearing on the motion to suppress the photographic identification was conducted on October 29, 2001. [DE 11, Ex.6] Both the victim and the detective who prepared the line-up testified. Following the hearing, the court denied relief in a written order, finding as follows:

In his motion, the Defendant argues that the unduly suggestive photo identification of the Defendant gave rise to a substantial likelihood of irreparable misidentification and should, therefore, be suppressed. This Court disagrees.

In Neil v. Biggers, the U.S. Supreme Court announced a two-part test for evaluating whether a pre-trial identification procedure is impermissibly suggestive. The first step determines if he police used unnecessarily suggestive procedures to obtain the out-of-court identification. If so, the next step involves a determination as to whether, in light of all the circumstances, there is a substantial likelihood of misidentification. Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1982).

Based on the evidence presented, which includes the photograph array and the testimony of the witnesses, this Court finds that the photo lineup identifications made by Mr. Gordon and Ms. Harelik, including the array of six photos and the single photo of the Defendant retried from the pawn shop was not suggestive. No evidence was presented that indicates that the photographs or the procedures employed by the police were improper. The fact that the victim never saw the Defendant's face goes to the weight of the identification, not its admissibility. Because this Court does not find suggestiveness, it need not discuss the substantial likelihood of misidentification prong of the Neil v. Biggers test.

Accordingly, it is

ORDERED AND ADJUDGED that Defendant's Motion to Suppress Photographic

16

Identification is <u>DENIED</u>.

[DE 11, Ex.6]

Under these circumstances, it is apparent that the denial of Dixon's motion to suppress the photographic identification was not the result of any deficiency on the part of defense counsel. Instead, the trial court applied appropriate controlling federal precedent in deciding that the photographs and procedures employed by the police were not suggestive. <u>Cf</u>. <u>Neil v. Biggers</u>, <u>supra</u>. Accordingly, neither prong of the <u>Strickland</u> analysis is satisfied by Dixon's argument, and his third subclaim of ineffective assistance of counsel warrants no relief.

In his fourth subclaim, Dixon faults his counsel for failing to move to suppress his taped statement on the ground that the <u>Miranda</u> warnings he received were not tape recorded. However, like federal courts as discussed above in connection with claim two, Florida law recognizes no requirement that confessions be tape-recorded. <u>State v. DuPont</u>, 659 So.2d 405, 408 (Fla. 2 DCA), <u>rev.denied</u>, 666 So.2d 144 (Fla.), <u>cert.denied</u>, 116 S.Ct. 1679)(1996)("While the better practice would be to record interviews and confessions, police are not required to do so."); <u>accord</u>, <u>State v. Williams</u>, 386 So.2d 27, 29 (Fla. 2 DCA 1980). Consequently, because a motion to suppress Dixon's statement on the ground that a portion of it was not recorded rightfully would have been denied under either Florida or federal law, counsel made no error and caused Dixon to suffer no prejudice when no such motion was made, and subclaim four states no claim for ineffective assistance.

In his fifth subclaim, Dixon contends that he received ineffective assistance because his counsel failed to move to

17

suppress his taped statement on the ground that the <u>Miranda</u> waiver form did not apprise him of his right to have counsel present during questioning. However, as discussed above in connection with claim two, the waiver form at issue was not held to be deficient until 2005, a year after Dixon's conviction became final. <u>Roberts v. State</u>, <u>supra</u>. It is well settled that an attorney's failure to anticipate a change in the law cannot form the basis for claim of ineffective assistance. <u>United States v. Ardley</u>, 273 F.3d 991, 993 (11 Cir. 2001); <u>Funchess v. Wainwright</u>, 772 F.2d 682, 691 (11 Cir. 1985). Under <u>Strickland</u>, an attorney's performance is to be measured instead on reasonableness under prevailing professional norms. <u>Id</u>. at 688. Because counsel's failure in this case to challenge the standard waiver form a year before it was held to be deficient was reasonable under the professional norms prevailing at that time, it did not amount to constitutionally deficient representation, and Dixon's fifth subclaim of ineffective assistance should be rejected.

For the foregoing reasons, it is recommended that this petition for habeas corpus relief be denied.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Dated this 17th day of May, 2008.

_____

UNITED STATES MAGISTRATE JUDGE

cc:  Joseph J. Dixon, Jr., <u>Pro Se</u>
     DC #788301
     Florida State Prison
     7819 N.W. 228 Street
     Raiford, FL 32026-3000

August A. Bonavita, AAG
Office of the Attorney General
1515 North Flagler Drive, #900
West Palm Beach, FL 33401-3428